IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:13-CV-126-FL

| GEORGE R. EVANS, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | **ORDER and** |
| v. | ) ) | **MEMORANDUM AND** |
| OFFICER S.C. BRITT, et al., | ) ) | **RECOMMENDATION** |
| Defendants. | ) ) | |

This pro se case is before the court on the motion to proceed *in forma pauperis* under 28 U.S.C. § 1915(a)(1) (D.E. 1) by plaintiff George R. Evans ("plaintiff") and for a frivolity review pursuant to 28 U.S.C. § 1915(e)(2)(B). These matters were referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), respectively. (*See* Minute Entry after D.E. 1).

## ORDER ON *IN FORMA PAUPERIS* MOTION

The court finds that plaintiff has adequately demonstrated his inability to prepay the required court costs. His motion to proceed *in forma pauperis* is therefore GRANTED.

## MEMORANDUM AND RECOMMENDATION ON FRIVOLITY REVIEW

### I. BACKGROUND

#### A. Defendants

In his complaint (D.E. 1-1),[1] a five-page typewritten document, plaintiff names as defendants: (1) S.C. Britt, an officer with Lanksford Protective Service ("LPS"), a private security company retained by the Greensboro Transit Authority ("GTA"); (2) Sam Lanksford, owner of LPS; (3) Jeff Mitchell, Vice President of LPS; (4) LPS; (5) the GTA; (6) J.K. Griffin,

---

[1] Citation to the complaint is to the pages assigned by the court's electronic CM/ECF filing system.

an officer with the Greensboro Police Department ("GPD"); (7) Ken Miller, Chief of the GPD[2]; (8) the GPD; and (9) the City of Greensboro ("City"). (Compl. 1, 2). Plaintiff states that he is suing the defendants in their individual and official capacities. (*Id.* at 1).

### B. Alleged Events Underlying Suit

In his complaint, plaintiff describes the events giving rise to his suit as follows:

On or about 21 September 2011, LPD officer Britt and another LPS officer, both white, detained plaintiff, apparently black, at the GTA bus depot on Washington Street in Greensboro. (*Id.* at 2). They directed plaintiff to stand up and handcuffed him behind his back. (*Id.* at 3). They then took him before a white man and asked the white man whether plaintiff had sold him any drugs. (*Id.*). The white man said plaintiff had not, but Britt said that plaintiff was under arrest anyway for selling drugs. (*Id.*).

Britt then contacted GPD officer Griffin, a member of the GPD drug unit. (*Id.*). After he arrived, Griffin told Britt that "he," apparently Griffin, did not have a criminal case against plaintiff. (*Id.*). Nevertheless, Griffin told plaintiff that had he been there earlier, he would have arrested plaintiff. (*Id.*).

Britt then charged plaintiff with possession of prescription medication, although the medication had allegedly been prescribed for plaintiff by his physician. (*Id.*). The medication was Ativan for plaintiff's bipolar disorder and Vicodin for pain. (*Id.* at 3). Britt allegedly told plaintiff that the doctor had given him too many pills (plaintiff had 70), he was taking the medication from plaintiff, and plaintiff would have to return to his doctor if he wanted more.

---

[2] Although not listed as a defendant in the caption of the complaint or the docket sheet, the complaint alleges that GPD Chief Miller is the person who oversees the employees of the GPD (Compl. 2) and is the responsible party on behalf of it, and plaintiff filed a proposed summons to Miller (D.E. 1-3 at 13-14) with his complaint. The Clerk is DIRECTED to add Miller to the docket as a defendant.

(*Id.*). After Britt took all of the medication, Griffin stated that plaintiff needed it for a reason and Britt returned about six Ativan pills to plaintiff, keeping the rest as evidence. (*Id.*).

By returning the six pills to plaintiff, Britt purportedly committed a felonious violation of a North Carolina law prohibiting the re-prescription of drugs by someone other than a physician. (*Id.* at 3). Griffin did not arrest or report Britt for this alleged felony, and thereby himself purportedly violated the law and conspired with Britt to cover up Britt's crime. (*Id.*).

Britt also charged plaintiff with resisting arrest. (*Id.* at 4). Britt created false evidence to support these charges. (*Id.*).

Britt's actions against plaintiff were based on his discrimination against blacks, the homeless, and others. (*Id.* at 4). Griffin did not bring charges against Britt because they purportedly collude in such discrimination. (*Id.*). In June 2012, the District Attorney's office dismissed all charges against plaintiff. (*Id.*).

Both before and after the dismissal, plaintiff contacted LPS, including LPS Vice President Mitchell, about the incident, but never received a reply. (*Id.*). LPS allegedly allows its officers to discriminate against blacks, the homeless, and others at the bus depot. (*Id.*).

**C.    Claims**

Plaintiff brings his suit "pursuant to 42 U.S.C. 1983, 42 USC 1988, et[] seq." (*Id.* at 1) (spacing altered). He seeks $5 million against defendants apparently in compensatory damages and $500 million in punitive damages. (*Id.* at 4-5). He also demands costs, attorney's fees (notwithstanding his pro se status), and other relief deemed appropriate and just by the court. (*Id.* at 5). [3]

---

[3] Plaintiff seeks certification of this case as a class action. (Compl. 5). That request is not before the court at this time.

## II. APPLICABLE LEGAL STANDARDS

### A. Standard of Review for Frivolity Determinations under 28 U.S.C. § 1915

After allowing a party to proceed *in forma pauperis*, as here, the court must conduct a frivolity review of the case pursuant to 28 U.S.C. § 1915(e)(2)(B). The court must determine whether the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from an immune defendant, and is thereby subject to dismissal. 28 U.S.C. § 1915(e)(2)(B); *see Denton v. Hernandez*, 504 U.S. 25, 27 (1992) (standard for frivolousness). Although in evaluating frivolity a pro se plaintiff's pleadings are held to "less stringent standards" than those drafted by attorneys, *White v. White*, 886 F.2d 721, 722-23 (4th Cir. 1989), the court is not required to accept a pro se plaintiff's contentions as true, *Denton*, 504 U.S. at 32. Instead, the court is permitted to "pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). Such baseless claims include those that describe "fantastic or delusional scenarios." *Id.* at 328. Provided that a plaintiff's claims are not clearly baseless, the court must weigh the factual allegations in plaintiff's favor in its frivolity analysis. *Denton*, 504 U.S. at 32. The court must read the complaint carefully to determine if a plaintiff has alleged specific facts sufficient to support the claims asserted. *White*, 886 F.2d at 724.

Under Fed. R. Civ. P. 8, a pleading that states a claim for relief must contain "a short and plain statement of the grounds for the court's jurisdiction . . . [and] a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1), (2). Case law explains that the factual allegations in the complaint must create more than a mere possibility of misconduct. *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Likewise, a complaint is insufficient if it offers

4

merely "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted)).

### B. § 1983 Claims

To establish a claim under § 1983, a plaintiff must prove: (1) the violation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation of the right was committed by a person acting under the color of state law. *Williams v. Studivent*, No. 1:09CV414, 2012 WL 1230833, at *4 (M.D.N.C. 12 Apr. 2012) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). To show that that a defendant acted under the color of state law, "'[t]he person charged must either be a state actor or have a sufficiently close relationship with state actors such that a court would conclude that the non-state actor is engaged in the state's actions.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615-16 (4th Cir. 2009) (quoting *DeBauche v. Trani*, 191 F.3d 499, 506 (4th Cir. 1999)).

## III. ANALYSIS

### A. Claims based on Alleged Re-prescription of Plaintiff's Medication

Plaintiff's allegation that LPS officer Britt violated North Carolina drug laws by giving back to plaintiff a portion of the pills he had seized from plaintiff is obviously baseless. Britt was not prescribing the medication anew or dispensing it, but rather simply returning evidence he had seized a few minutes before. Any claims based on the alleged re-prescription should accordingly be dismissed for failure to state a claim.

### B. Claims against the City-related Defendants: Griffin, Miller, the GPD, and the City

The complaint also fails to state a claim against GPD officer Griffin individually. According to the complaint, Griffin did not arrive until after Britt had detained and then arrested

plaintiff. Indeed, plaintiff alleges that Griffin refused to arrest him. The allegations against Griffin based on Britt's return of a portion of plaintiff's medication to him fail because, as noted, the return was not unlawful. Although plaintiff alleges that "Griffin did not bring charges against Britt because they work hand in hand depriving others of their civil rights," this conclusory allegation fails adequately to state a claim for conspiracy against Griffin. (*Id.* at 4); *Harris v. City of Virginia Beach, VA*, 11 Fed. Appx. 212, 215 (4th Cir. 2001) (affirming district court's ruling that a plaintiff "'alleging unlawful intent in conspiracy claims under § 1985(3) or § 1983 [must] plead specific facts in a nonconclusory fashion to survive a motion to dismiss'") (citing *Gooden v. Howard County, Maryland*, 954 F.2d 960, 969-70 (4th Cir. 1992)). The complaint does not otherwise state a conspiracy claim against Griffin.

The claims against Griffin in his official capacity are actually against his employer, the City. *See, e.g., Wyche v. City of Franklinton*, 837 F. Supp. 137, 144 (E.D.N.C. 1993) ("A suit against a city official in his official capacity is a suit against the city itself.") (citing *Hughes v. Blankenship*, 672 F.2d 403, 406 (4th Cir. 1982)). The City faces no liability for Griffin's conduct because, among other reasons, no actionable wrongdoing is alleged against Griffin. The claims against Griffin in his official capacity therefore fail.

The complaint fails to state a claim against GPD Chief Miller in his individual capacity as well. To show liability against supervisory personnel, there must be allegations showing personal involvement in the alleged wrongdoing:

> A supervisory official may not be held liable based upon a theory of *respondeat superior*, because *respondeat superior* generally is inapplicable in § 1983 suits. *Monell v. Dep't of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). To the extent plaintiff alleges a claim pursuant to supervisor liability, the United States Supreme Court recently addressed the theory of supervisor liability in the context of a § 1983 action. *Iqbal*, 556 U.S. at 677. In *Iqbal*, the Court held: "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the

official's own individual actions, has violated the constitution." *Id.* at 676. Mere knowledge is not sufficient to establish personal participation. *Id.*

*Toppin v. Kornegay*, No. 5:12-CT-3117-FL, 2014 WL 694850, at *5 (E.D.N.C. 21 Feb. 2014).[4] Here, there are no allegations showing Miller's individual involvement in any alleged wrongdoing. There are also no claims against him in his official capacity because, as with Griffin, the complaint fails to show any actionable wrongdoing by him.

The complaint also fails to state any claims against the GPD. A police department is not a proper defendant in a § 1983 action. *See Moore v. City of Asheville, N.C.*, 290 F. Supp. 2d 664, 673 (W.D.N.C. 2003) (dismissing all claims against the Asheville Police Department "because, under North Carolina law, the Asheville Police Department is not a 'person' and, therefore, lacks the capacity to be sued" (citing *Coleman v. Cooper*, 89 N.C. App. 188, 192, 366 S.E.2d 2, 5 (1988))), *overruled on other grounds by Meyer v. Walls*, 347 N.C. 97, 489 S.E.2d 880 (1997); *see also Jackson v. Wilkes Cnty.*, No. 5:11-CV-00042-RLV, 2012 WL 4753304, at *3 (W.D.N.C. 28 Sept. 2012) (dismissing § 1983 claims against Wilkesboro Police Department because it is not a suable entity); *Elabanjo v. Bellevance*, No. 1:11CV349, 2012 WL 4327090, at * 4 (M.D.N.C. 18 Sept. 2012) (mag. judge's rep. & recommendation) (same holding with respect to the Chapel Hill Police Department), *adopted*, 2012 WL 5864004 (19 Nov. 2012).

While as a municipality, the City can be a proper defendant in a § 1983 action, plaintiff fails to state a claim against it. Plaintiff alleges that the City has liability, in part, on the grounds that it is responsible for the actions of its employees. (Compl. 2). As noted, though, liability cannot rest on respondeat superior in § 1983 cases. *See Boswell v. Bullock*, No. 5:11-CV-94-F,

---

[4] *See also Davis v. Corizon Med. Servs.*, No. JKB–12–2051, 2013 WL 4507418, at *4 (D. Md. 22 Aug. 2013) ("Supervisory liability under § 1983 must be supported with evidence 1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; 2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and 3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff."), *aff'd,* 2014 WL 819357 (4th Cir. 4 Mar. 2014).

2012 WL 2920036, at *11 (E.D.N.C. 17 July 2012) ("Although a local government entity may be held liable under § 1983, it is well settled that a local government entity cannot be held liable under § 1983 on a *respondeat superior* theory." (citing *Monell*, 436 U.S. at 690-91)).

Plaintiff also alleges that the City failed to take action after the incident in question against Griffin, the only City employee allegedly involved in the incident in issue. (Compl. 2). As noted, however, the complaint fails to show wrongdoing by Griffin. Moreover, plaintiff's complaint fails to show any deprivation of plaintiff's constitutional rights resulting from the alleged inaction by the City. *See, e.g.*, *Ritchie v. Jackson*, 98 F.3d 1335, 1996 WL 585152, at *2 (4th Cir. 11 Oct. 1996) (Table) ("To prove a conspiracy under § 1983, it is necessary that there have been, besides the agreement, an actual deprivation of a right secured by the Constitution and laws. Mere proof of a conspiracy is insufficient to establish a section 1983 claim." (internal quotation marks omitted)).

### C. Claims against the LPS-related Defendants: Britt, Sam Lanksford, Mitchell, LPS, and the GTA

The court finds that the complaint does adequately state a claim and does not suffer from any other deficiencies under 28 U.S.C. § 1915(e)(2)(B) with respect to LPS officer Britt individually regarding his alleged detention and arrest of plaintiff. His status as an employee of a private entity does not insulate him from the alleged wrongdoing. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970) (recognizing that private parties may be held liable under § 1983 where it can be shown that they acted under the color of state law); *Benson v. Plaza Assocs., Inc.*, No. 5:07-cv-87-FL, 2007 WL 2021794, at *4 (E.D.N.C. 9 July 2007) (mag. judge's mem. and recommendation adopted by order of district judge at same citation) (allowing plaintiff's § 1983 claims against mall police, as well as mall security officers, to proceed after frivolity review under *Monell* principles). Claims against Britt individually arising from his alleged detention

and arrest of plaintiff, including the charge of resisting arrest and falsifying records, should accordingly proceed. Because, as discussed below, the case should proceed against LPS, the official capacity claims against Britt should be dismissed as moot, assuming that official capacity claims are assertable against the employee of a private entity.

As to Sam Lanksford, the sole mention of him in the complaint is his identification in the caption as the owner of LPS. There are no allegations in the body of the complaint mentioning him. His alleged status as the owner of LPS alone is not a sufficient basis for liability. *See El v. All Am. Bail Bonds, Inc.*, No. 1:13-cv-1119, 2014 WL 298773, at *3 (M.D.N.C. 28 Jan. 2014) (mag. judge's mem. and recommendation adopted by order of district judge at same citation) ("[R]espondeat superior liability is not available, even for private corporations, under 42 U.S.C. § 1983."); *Schiesser v. Wexford Health C.M.S. Corizon*, No. AW-12-cv-2795, 2013 WL 4049723, at *2 (D. Md. 8 Aug. 2013) ("[A] private corporation is not liable under § 1983 for actions allegedly committed by its employees when such liability is predicated solely upon a theory of respondeat superior."). The complaint therefore fails to state a claim against Sam Lanksford individually. Assuming that official status claims are assertable against an employee of a private company, any such claims against Sam Lanksford fail because the complaint shows no wrongdoing by him for which LPS could be held liable.

The complaint also fails to state a claim against LPS Vice President Mitchell. The allegations regarding him are that plaintiff contacted him about the incident, but that he did not investigate or take other action. The complaint shows no deprivation of plaintiff's constitutional rights resulting from such alleged inaction. *See Ritchie*, 1996 WL 585152, at *2. As with Sam Lanksford, Mitchell's alleged status as an officer of LPS is not a sufficient ground for liability. *See El,* 2014 WL 298773, at *3; *Schiesser,* 2013 WL 4049723, at *2. The official capacity

claims against Mitchell, to the extent assertable, fail for lack of a showing of wrongdoing by him.

As to LPS, the court finds that the complaint does state a claim against it by adequately alleging that the purportedly wrongful detention and arrest by Britt were pursuant to a policy and custom of LPS. *See Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 727-28 (4th Cir. 1999) ("[T]he principles of § 1983 municipal liability articulated in *Monell* and its progeny apply equally to a private corporation that employs special police officers."); *Benson*, 2007 WL 2021794, at *4. Specifically, plaintiff alleges that LPS "at the bus depot is very prejudice[d] and allowed to harass, intimidate[,] file[]false charges against homeless, blacks and people of color." (Compl. 4). The case should accordingly proceed against LPS.

Plaintiff alleges that the GTA is liable, in part, as the entity that hired LPS and that, in effect, is responsible for the misconduct of LPS personnel. (Compl. 2). Again, though, liability under § 1983 may not rest on such a respondeat superior theory. *El,* 2014 WL 298773, at *3; *Schiesser,* 2013 WL 4049723, at *2. Plaintiff also alleges that the GTA failed to take remedial action in response to the incident. He has not, however, shown any deprivation of constitutional rights resulting from such purported inaction. *See Ritchie*, 1996 WL 585152, at *2. The complaint therefore fails to state a claim against the GTA.

### IV. CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that:

1. The following claims be DISMISSED:

    a. all claims based on Britt's return of medication to plaintiff;

    b. all claims against Griffin, Miller, Sam Lanksford, and Mitchell in their individual and official capacities, and the claim against Britt in his official capacity; and

  c.  all claims against the GPD, City, and GTA.

 2. The case proceed on the claims against Britt individually and against LPS arising from Britt's alleged detention and arrest of plaintiff.

 The Clerk is DIRECTED to send a copy of this Memorandum and Recommendation to plaintiff, who shall have until 9 June 2014 to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.

 The Clerk is FURTHER DIRECTED to add GPD Chief Miller to the docket as a defendant, in accordance with footnote 2 above.

 SO ORDERED, this the 21st day of May 2014.

_____
James E. Gates
United States Magistrate Judge