IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 7:13-CV-126-FL

| | | |
|---|---|---|
| GEORGE R. EVANS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| OFFICER STEPHEN CASHWELL BRITT[1] and LANKFORD PROTECTIVE SERVICES,[2] | ) ) ) | |
| | ) | |
| Defendants. | ) | |

The matter is before the court on the parties' cross-motions for summary judgment (DE 46, 51). Also before the court is plaintiff's "final motion and preparation for court trial," which the court construes as a motion to expedite (DE 58). The cross-motions for summary judgment were fully briefed, but defendants did not respond to plaintiff's motion to expedite. In this posture, the issues raised are ripe for adjudication. For the following reasons, the court grants defendants' motion for summary judgment, denies plaintiff's motion for summary judgment, and denies as moot plaintiff's motion to expedite.

---

[1] The party plaintiff referred to as S.C. Britt has informed the court that his full name is Stephen Cashwell Britt. The clerk of court is DIRECTED to amend the case's caption to reflect such change.

[2] The court has constructively amended the caption of this order to reflect only those defendants not terminated by prior order of this court. As set forth herein, all originally named defendants except for Stephen Cashwell Britt and Lanksford Protective Services were dismissed by order entered July 23, 2014.

**STATEMENT OF THE CASE**

On June 17, 2013, plaintiff, currently a pretrial detainee pending charges in an un-related action, filed this action *pro se* pursuant to 42 U.S.C. §§ 1983,1988 and sought leave to proceed *in forma pauperis* pursuant to 28 U.S.C.§ 1915(a)(1). Plaintiff named the following as defendants in this action: (1) Lankford Protective Service[3] ("LPS") Officer Stephen Cashwell Britt ("Britt"); (2) LPS owner Sam Lankford ("S. Lankford"); (3) LPS Vice President Jeff Mitchell ("Mitchell"); (4) LPS; (5) the Greensboro Transit Authority; (6) Greensboro Police Officer J.K. Griffin ("Officer Griffin"); (7) Chief Greensboro Police Officer Ken Miller ("Miller"); (8) the Greensboro Police Department; and (9) the City of Greensboro. Plaintiff sued these defendants in both their individual and official capacities. Plaintiff sought compensatory and punitive damages, as well as costs, attorney's fees, and any other relief deemed appropriate and just by the court. (Compl. pp. 4-5.)

On June 20, 2013, the action was referred to Magistrate Judge James E. Gates pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) for ruling on plaintiff's motion to proceed *in forma pauperis* and for a frivolity review pursuant to 28 U.S.C. § 1915(e)(2)(B). On May 21, 2014, the magistrate judge entered an order granting plaintiff's motion to proceed *in forma pauperis,* and the complaint was filed. The magistrate judge's order also provided a memorandum and recommendation on frivolity review in which the magistrate judge recommended that the court dismiss plaintiff's claims against all defendants except for Britt and LPS. Specifically, the magistrate judge recommended that plaintiff be permitted to proceed with his § 1983 claims against Britt individually arising from Britt's alleged detention and arrest of plaintiff. Likewise, the magistrate judge recommended that plaintiff be permitted to proceed with his allegation that Britt's wrongful detention and arrest were pursuant

---

[3] Lankford Protective Service is a private security company retained by the City of Greensboro to provide security for all city owned buildings and city events in the Greensboro urban area. (Britt Aff. ¶ 4 and Ex. A, p. 1.)

2

to LPS' unconstitutional policy and custom of racial prejudice, harassment, and intimidation. The court adopted the magistrate judge's memorandum and recommendation, on July 23, 2014, and at that time dismissed (a) all claims based on Britt's return of medication to plaintiff, and all claims against Britt in his official capacity; and (b) all claims against Griffin, Miller, Sam Lanksford, Mitchell, the Greensboro Police Department, the City of Greensboro, and Greensboro Transit Authority.

On September 29, 2014, plaintiff filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. In response, defendants filed a motion pursuant to Federal Rule of Civil Procedure 56(d) requesting plaintiff's motion be denied or deferred to allow defendants the opportunity to conduct discovery. In the interim, the court entered a case management order which provided, *inter alia*, a discovery deadline of April 6, 2015. The court denied without prejudice plaintiff's motion for summary judgment subject to re-filing.

On January 8, 2015, plaintiff filed a second motion for summary judgment, and attached investigation reports, his citation for possession of a controlled substance, an LKS evidence control form, a letter from plaintiff to Jeff Mitchell, and the June 25, 2012, Guilford County General Court of Justice order disposing of plaintiff's property. Plaintiff subsequently filed a motion to introduce evidence on a flash drive. On March 2, 2015, the court entered a text order stating that the flash drive tendered by plaintiff was found defective and its contents were unreadable. The clerk of court returned the flash drive to plaintiff.

On March 26, 2015, attorney Ronald Dean Ingle, Jr., who represented plaintiff in a North Carolina state court matter, sent to the court a letter and enclosed a digital versatile disc ("DVD") containing two videos which plaintiff believes are pertinent to the instant case. Plaintiff notified

3

defendants that he submitted the DVD to the court, but was unable to provide defendants with a copy of the DVD due to plaintiff's incarceration. Defendants subsequently objected to the court's consideration of the DVD on the grounds that plaintiff's former attorney had not entered a notice of appearance in this case and because defendants had not had an opportunity to view the video. The following day, the court entered a text order directing the clerk to send a copy of the DVD to defendants, and a copy of the DVD was mailed to defendants that day.

In the interim, defendants filed a cross-motion for summary judgment, to which defendants attached affidavits from defendant Britt, Officer Jason Bolen ("Officer Bolen"), Officer Clarence Schoolfield ("Officer Schoolfield"), and Officer Griffin. Plaintiff responded to defendants' motion and attached to his response excerpts from Officer Griffin's affidavit, an excerpt from defendants' motion for summary judgment, and investigation reports. Plaintiff, additionally, filed a motion to expedite to which he attached a personal affidavit.

## STATEMENT OF THE FACTS

Except as otherwise noted below, the undisputed facts are as follows. At approximately 8:30 p.m. on September 21, 2011, LPS security officer Bolen was monitoring the security cameras at the City of Greensboro Greyhound bus station. (Bolen Aff. ¶¶ 6-7.) Officer Bolen observed two black males sitting behind the bus station on a bench. (Id. ¶ 7.) Officer Bolen then observed a white male, later identified as Richard Smith, come out of the bus station and sit on the bench next to the older of the two black males, who later was identified as plaintiff. (Id. ¶ 8.) Officer Bolen watched Richard Smith hand plaintiff a small, round, metallic-looking object. (Id.) Plaintiff, then, examined the metal object, dropped it, and picked it back up. (Id.) After examining the object again, plaintiff pulled what appeared to be a prescription pill bottle from his right pant pocket, took out a single pill

4

from the bottle, and gave the pill to Richard Smith.[4] (Id.) Richard Smith took the pill and went into the bus station lobby. (Id.)

Immediately after observing the transaction, Officer Bolen used his radio to contact LPS officers Jones and Mohoney and informed the officers that Officer Bolen had observed a hand-to-hand illegal drug transaction between an older black male sitting on the left side of the bench behind the bus station and a white male. (Id. ¶ 11.) Defendant Britt heard Officer Bolen's radio transmission and decided to investigate. (Britt Aff. ¶ 9.) Britt then confirmed with Officer Bolen, over the radio, that the suspect remained on the bus station bench. (Bolen Aff. ¶ 12.)

Prior to approaching plaintiff, Britt first made contact with Richard Smith. (Britt Aff. ¶ 10.) Britt briefly questioned Smith, and Smith informed Britt that he gave plaintiff a friendship ring so that plaintiff could pawn it for some money. (Id.) Smith also told Britt that plaintiff gave him a white pill in exchange for the friendship ring, but that Smith had flushed the pill down the toilet because Smith did not take pills. (Id.)

Britt next approached plaintiff at the bench and asked plaintiff for identification. (Id. ¶ 11.) The parties dispute the series of events that transpired subsequent to the parties exchange regarding plaintiff's identification. According to Britt, Britt explained to plaintiff that plaintiff was under investigation for possession of pills and again asked plaintiff to stand up and provide identification. (Id.) In response, plaintiff stated: "I don't have to give you shit." (Id.) Britt then leaned down and touched plaintiff's elbow to encourage plaintiff to stand, but plaintiff immediately pulled away and

---

[4] As stated, plaintiff provided the court with two videos of the instant incident taken at the Greyhound bus station. The second video depicts an interaction between plaintiff and Richard Smith, and supports defendants' version of the facts in that, although the quality of the video is poor, Richard Smith can be seen giving plaintiff something, which plaintiff drops on the floor and picks back up. Plaintiff then gives Richard Smith something and Richard Smith walks away. See (Pl.'s DVD, video number 2.)

began backing away. (Id.) Given Britt's experience that weapons typically are involved with illegal drug transactions and the fact that plaintiff refused to cooperate, Britt decided to handcuff plaintiff in order to protect those involved. (Id. ¶¶ 11, 13.) LPS officer Brandon Ellison ("Ellison") assisted Britt in placing plaintiff in handcuffs. (Id. ¶ 11.) According to Britt, plaintiff then flexed his arms and attempted to avoid being handcuffed. (Id.) The officers were able to place plaintiff in handcuffs.[5] (Id.)

Accordingly to plaintiff's version of the events, Britt told plaintiff to stand up and put his hands behind his back when Britt initially approached plaintiff. (Compl. p. 3.) In response, plaintiff asked "what for" and Britt responded "because I say so." (Id.); (Pl.'s Aff. (DE 58), p. 1.) The officers then grabbed plaintiff's hands and arms and twisted them behind plaintiff's back, placing plaintiff in handcuffs. (Id.) According to plaintiff's version of the facts, Britt then "took plaintiff before some white guy and Britt asked the person whe[]ther plaintiff had sold him any drugs. The person stated that plaintiff was not the person." (Compl. p. 3; (DE 46) Ex. 4; (Pl.'s Aff. (DE 58), p. 1.)

It is undisputed that, after placing plaintiff in handcuffs, Britt then performed a frisk of plaintiff's person. (Britt Aff. ¶ 14.) During the frisk, Britt felt what he believed to be a pill bottle in plaintiff's right front pocket. (Id.) Britt then asked plaintiff what was in his pocket and plaintiff responded: "My medicine." (Id.) Britt retrieved the pill bottle, opened it, and found 60 small white pills and two larger pills. (Id.) Plaintiff also produced identification which reflected his name as

---

[5] The first video from the DVD provided by plaintiff shows LPS officers' initial contact with plaintiff, as well as the subsequent handcuffing of plaintiff. As noted, the quality of the video is poor and it is difficult to discern exactly what is transpiring. See (Pl.'s DVD, number 1.); (Pl.'s Aff. (DE 58), p. 1.) ("First off the quality of the ca[mera] was so bad you could not tell what the plaintiff gave Mr. Smith.") Further, due to the quality of the video it is impossible to identify the persons seen in the video. (Id.)

being George Reynold Evans. (Id. ¶ 15.) Britt then took plaintiff to the LPS security office for an interview. (Id.)

At the security office, Britt contacted Greensboro Police Department Detective Officer Schoolfield, a member of the department's narcotics unit. (Id. ¶ 16 and Schoolfield Aff. ¶ 5.) Britt advised Officer Schoolfield of what had occurred at the bus station, and Officer Schoolfield came to the scene and identified the smaller pills found on plaintiff's person as Lorazepam, a schedule III narcotic, and the two larger pills as Vicodin, a schedule IV narcotic.[6] (Schoolfield Aff. ¶¶ 5-6.) (Id.) Plaintiff does not dispute the classification of the medication. ((DE 46), Ex. 4.) After identifying the medication, Schoolfield advised Britt to allow plaintiff to keep a two-day supply of the Lorazepam because it appeared that plaintiff had a prescription for that medication. (Britt Aff. ¶ 16 and Schoolfield Aff. ¶ 7.) Plaintiff states that, during this time period, Officer Schoolfield stated that Britt did not have a criminal case against plaintiff or that Britt could not charge plaintiff with a crime. (Compl. p. 3.) Officer Schoolfield denies making any such statement.[7] (Schoolfield Aff. ¶ 8.)

Britt followed Officer Schoolfield's advice and permitted plaintiff to keep a two-day supply of the Lorazepam, and seized the remaining pills.[8] (Britt Aff. ¶ 16.) After confiscating plaintiff's

---

[6] Officer Schoolfield states in his affidavit that Lorazepam is a schedule IV narcotic and Vicodin is a schedule III narcotic. (Schoolfield Aff. ¶ 6.) Despite the fact that there is some discrepancy as to the schedule of the respective drugs, there is no dispute, however, that both medications are narcotics.

[7] The court notes that plaintiff alleges that Greensboro Police Officer Griffin made this statement to Britt. However, the record reflects that Schoolfield, and not Officer Griffin, was the Greensboro police officer involved with the September 21, 2011, incident. (Griffin Aff. ¶ 19.) Although plaintiff states in his affidavit that Officer Griffin was involved with the instant incident, he presents no evidence to support such a contention. (Pl.'s Aff. (DE 58), p. 3.) Rather, the record reflects that Officer Griffin was involved with an unrelated incident with plaintiff. Specifically, Officer Griffin arrested and charged plaintiff with possession with the intent to sell or distribute a schedule III controlled substance on November 23, 2011. (Id. ¶ 17.) The November 2011, incident is not the subject of plaintiff's complaint. (Id. ¶¶ 17, 19.)

[8] The Vicodin pills were not in the correct prescription pill bottle. (Britt Aff. ¶ 16.)

7

pills, Britt informed plaintiff that he could not give, sell, or hand out his medication and that plaintiff

needed to visit plaintiff's physician within two days to replace his medication. (Britt Aff. ¶ 17.)

Britt also cited plaintiff for possession of less than 100 units of a schedule III and IV narcotic and

with resisting, obstructing, and delaying an officer. (Id.; Pl's Mot. for S.J. Attach. 2.) Plaintiff then

was released and the confiscated pills were delivered to property control. (Id.; Pl.'s Mot. Attach.

3.) Britt states that plaintiff continuously cursed at Britt, accused Britt of being a racist, and stated

that Britt did not like black people throughout the period of investigation and detention. (Britt Aff.

¶ 18.)

On October 5, 2011, plaintiff sent a letter to defendant Mitchell, the vice president of LPS,

complaining about the incident with Britt at the Greyhound bus station. ((DE 46) Ex. 4.; (DE 59),

p. 7.) LPS staff did not respond to plaintiff's letter or telephone calls regarding the incident.

((DE 59), p. 7.) The charges against plaintiff ultimately were dismissed and plaintiff's prescription

medication was returned to him on June 25, 2012. (Pl.'s Mot. Attach. 5.)

## DISCUSSION

A.    Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). The party seeking summary judgment bears the initial burden of demonstrating the absence

of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the

moving party has met its burden, the nonmoving party then must affirmatively demonstrate with

specific evidence that there exists a genuine issue of material fact requiring trial. Matsushita Elec.

Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). Only disputes between the

parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

At the summary judgment stage the court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. Similarly, "[c]redibility determinations . . . are jury functions, not those of a judge." Id. at 255. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id.; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "a reasonable jury could reach only one conclusion based on the evidence," or when "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a jury issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

B.     Analysis

1.     Challenge to Detention

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures.  U.S. Const. amend. IV.  "The Supreme Court has identified two kinds of personal seizures: (1) brief investigatory stops of the sort identified in Terry v. Ohio, 392 U.S. 1 (1968) [] and (2) arrests."  United States v. Johnson, 599 F.3d 339, 344 (4th Cir. 2010), cert. denied, 131 S.Ct. 358 (2010).  Plaintiff challenges both the investigatory detention and arrest in this case.

The court begins with plaintiff's challenge to the investigatory detention.   In Terry, the Court held that an officer may, consistent with the Fourth Amendment, conduct a "brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot."  Illinois v. Wardlaw, 528 U.S. 119, 123 (2000) (citation omitted).  Whether reasonable suspicion exists to justify the stop depends on the "totality of the circumstances, including information known to the officers and any reasonable inferences to be drawn at the time of the stop." United States v. Williams, 450 F. App'x. 245, 246 (4th Cir. 2011).  "The reasonable suspicion determination is a commonsensical proposition, and deference should be accorded to police officers' determinations based on their experiences of what transpires on the street."  United States v. Brown, 398 F. App'x 865, 867 (4th Cir. 2010) (per curiam) (internal citations and quotations omitted).

Reasonable suspicion is an objective test.  The court considers the facts as they were known to the officer, not the officer's subjective beliefs.  United States v. Foreman, 369 F.3d 776, 781 (4th Cir. 2004).  Reasonable suspicion must exist at the time of the stop, not after the fact.  See United States v. Fields, 395 F. App'x 981, 982 (4th Cir. 2010) (citing United States v. Sokolow, 490 U.S. 1, 8 (1989)). The determination of reasonable suspicion must credit the professional experience of

the police officers who observe criminal activity on a regular basis. United States v. Haines, 42 F. App'x 554, 557 (4th Cir. 2002) ("[W]hile a defendant's mere presence in a high crime area is not by itself enough to raise reasonable suspicion, an area's propensity toward criminal activity is something that an officer may consider.") (citing United States v. Lender, 985 F.2d 151, 154 (4th Cir. 1993) (internal quotation omitted)). Finally, an officer may rely on information provided by a known third party to establish a reasonable suspicion that could justify an investigatory stop. Adams v. Williams, 407 U.S. 143, 146 (1972).

Here, the record reflects that plaintiff was in an area well known to LPS officers as an area with high illegal drug activity. (Britt ¶ 12; Bolen ¶ 10.) Further, LPS Officer Bolen observed plaintiff engage in what appeared, in Officer Bolen's training and experience, to be a hand-to-hand drug transaction with another male. (Bolen Aff. ¶ 9.) Officer Bolen then communicated his observations to Britt. (Id. ¶ 11.) Considering a totality of the circumstances, these facts support an objective reasonable suspicion that criminal activity was afoot, namely a hand-to-hand drug transaction. See United States v. Johnson, 599 F.3d 339, 346 (4th Cir. 2010) (finding reasonable suspicion of drug activity where the defendant was observed making hand-to-hand contact with multiple people and appeared to be waiting to meet them); see also, United States v. Hands, No. 7:11-CR-98-FL, 2012 WL 4928867, at *8 (E.D.N.C. Oct. 16, 2012) (finding that officer had reasonable suspicion for Terry stop based, in part, on information from a known and trustworthy informant and fellow officers' surveillance of the suspect), aff'd, 573 F. App'x 278 (4th Cir. 2014). Based upon the foregoing, the court finds that Britt had reasonable suspicion at the time of the stop to suspect that plaintiff was involved with criminal activity, and plaintiff's Fourth Amendment claim

11

challenging the detention fails. Thus, defendants' motion for summary judgment on this claim is GRANTED, and plaintiff's motion for summary judgment is DENIED.

The court next turns to the issue of whether plaintiff's arrest violated the Fourth Amendment. Seizure of an individual without probable cause is unreasonable and violates the Fourth Amendment to the United States Constitution. Miller v. Prince George's County, 475 F.3d 621, 627 (4th Cir. 2007). "For probable cause to exist, there need only be enough evidence to warrant the belief of a reasonable officer that an offense has been or is being committed; evidence sufficient to convict is not required." Brown v. Gilmore, 278 F.3d 362, 367 (4th Cir. 2002). To determine the existence of probable cause, courts must examine "the totality of the circumstances known to the officer" leading up to the time of arrest. Id. The court must "then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." Maryland v. Pringle, 540 U.S. 366, 371 (2003) (citations omitted). Accordingly, "an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." Devenpeck v. Alford, 543 U.S. 146, 153 (2004).

North Carolina General Statute § 90-95 "makes the possession, transportation or delivery of a controlled substance a crime." States v. Beam, 201 N.C. App. 643, 649, 688 S.E.2d 40, 44 (2010). "[O]ne may be exempt from State prosecution for the possession or the sale or delivery of controlled substances if that person is authorized by the North Carolina Controlled Substances Act to so possess or sell or deliver such substances." State v. McNeil, 47 N.C. App. 30, 38, 266 S.E.2d 824, 829 (1980) (citations omitted), appeal dismissed and disc. review denied, 301 N.C. 102, 273 S.E.2d 306 (1980); N.C. Gen. Stat. § 90-113.1(a). A person claiming an exemption pursuant to N.C. Gen Stat. § 90-113.1(a) has the burden to prove that he is entitled to an exemption. See State v.

12

<u>Beam</u>, 201 N.C. App. 643, 650, 688 S.E.2d 40, 49 (2010); <u>State v. Gillikin</u>, No. COA10-1226, 2011 WL 1901029, at *2 (N.C. App. May 17, 2011) ("This statute does not shift the burden of proof from the State to establish all the necessary elements of an offense under Chapter 90; it merely places the burden of proof on [the] defendant to establish that [he or] she is entitled to an exemption under its provisions.") (internal citation and quotation omitted).

Here, the parties do not dispute that plaintiff possessed the controlled substances Vicodin and Lorazepam in one prescription bottle. (Britt Aff. ¶ 16; (DE 46), Ex. 4.) The prescription bottle reflected that plaintiff had a prescription for Lorazepam only. (Britt Aff. ¶ 16.) Plaintiff did not present any evidence to Britt that he possessed a valid prescription for the Vicodin at the time he was charged with possession of a controlled substance. (<u>Id.</u>) In addition, Officer Bolen had observed plaintiff engaging in a hand-to-hand drug transaction, wherein plaintiff had transferred a white pill to Smith in exchange for a ring. (Bolen Aff. ¶¶ 6-11; Britt Aff. ¶¶ 9-11). Based upon the foregoing, the record reflects that there was sufficient evidence for a reasonable officer to believe that plaintiff had committed the offense of possession of a controlled substance-Vicodin, in addition to the offense of delivery of a controlled substance - Lorazepam. Thus, defendants' motion for summary judgment as to this claim is GRANTED, and plaintiff's motion for summary judgment is DENIED.

2.      Challenge to Protective Frisk

The court next turns to plaintiff's challenge to Britt's protective frisk of plaintiff's person. Generally, warrantless searches are "per se unreasonable under the Fourth Amendment-subject only to a few specifically established and well-delineated exceptions." <u>Arizona v. Gant</u>, 556 U.S. 332, 338 (2009) (citation and internal quotations omitted). A <u>Terry</u> frisk permits an officer to "conduct a carefully limited search of the outer clothing" of a person without a warrant when the officer has

a reasonable suspicion that the person is armed and dangerous. <u>Terry</u>, 392 U.S. at 27, 30. "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." <u>Id.</u> at 27. The Fourth Circuit has stated that "[j]udicial review of the evidence offered to demonstrate reasonable suspicion must be commonsensical, focused on the evidence as a whole, and cognizant of both context and the particular experience of officers charged with the ongoing tasks of law enforcement." <u>United States v. Branch</u>, 537 F.3d 328, 337 (4th Cir. 2008). This is an objective inquiry, and measures what an officer knew before conducting the pat-down. <u>Powell</u>, 666 F.3d at 186 (citations and quotations omitted). However, "it is entirely appropriate for courts to credit the practical experience of officers," as actions that may appear entirely innocent in some contexts may signal the existence of criminal activity in others. <u>Branch</u>, 537 F.3d at 336–37 (internal quotation and citation omitted); <u>United States v. Crittendon</u>, 883 F.2d 326, 329 (4th Cir. 1989) (stating that a suspect may be in handcuffs during the protective frisk). Finally, the Fourth Circuit Court of Appeals has noted that "guns often accompany drugs." <u>United States v. Sakyi</u>, 160 F.3d 164, 169 (4th Cir 1998).

In this case, the record reflects that both defendant Britt and Officer Bolen considered the bus station where plaintiff was stopped to be an area well-known for illegal drug activity. Additionally, Britt testified in his affidavit, that, in his experience as a law enforcement officer, when there is an illegal drug transaction, there usually are weapons involved. (Britt Aff. ¶ 13.) Finally, Britt was aware that Officer Bolen had observed plaintiff engaging in a hand-to-hand drug transaction. (Bolen Aff. ¶¶ 6-11; Britt Aff. ¶¶ 9-11). Considering the totality of the circumstances, the court determines that an objectively prudent officer in the same circumstances would have had

14

reasonable suspicion that drug activity was taking place at the bus station and that weapons might

be involved in relation to that activity. Thus, plaintiff failed to establish a Fourth Amendment claim,

and Defendants' motion for summary judgment as to this claim is GRANTED, and plaintiff's motion

for summary judgment is DENIED.

       3.     Malicious Prosecution

      Plaintiff asserts a malicious prosecution claim pursuant to the Fourth Amendment based upon

his arrest on September 21, 2011. A "malicious prosecution claim under § 1983 is properly

understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain

elements of the common law tort." Lambert v. Williams, 223 F.3d 257, 261 (4th Cir. 2000). In

order to state a malicious prosecution claim, a plaintiff must allege that the defendant (1) caused (2)

a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal

proceedings terminated in plaintiff's favor. See Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir.

2012) (citing Durham v. Horner, 690 F.3d 183, 188 (4th Cir. 2012)).

      Here, as stated, Britt had probable cause to arrest plaintiff, both for possession of a controlled

substance and for delivery of a controlled substance. Accordingly, plaintiff's malicious prosecution

claim related to his arrest fails. See, e.g., Yarborough v. Montgomery, 554 F. Supp. 2d 611, 621

(D.S.C. Apr. 17, 2008) ("The court having found that probable cause existed for his initial arrest,

Plaintiff cannot satisfy all of the above- listed elements" to establish malicious prosecution.). Based

upon the foregoing, defendants' motion for summary judgment on this claim is GRANTED, and

plaintiff's motion for summary judgment is DENIED.

4.      Seizure of Medication

The court next examines whether Britt violated plaintiff's Fourth Amendment rights by seizing plaintiff's medication. Britt, in support of his motion for summary judgment, argues that he acted lawfully in seizing plaintiff's prescription pills pursuant to the plain view doctrine.

"[L]aw enforcement officers may seize evidence in plain view, provided that they have not violated the Fourth Amendment in arriving at the spot from which the observation of the evidence is made." Kentucky v. King, 131 S.Ct. 1849, 1858 (2011) (citing Horton v. California, 496 U.S. 128, 136–40 (1990)). Under this "plain view" exception to the warrant requirement,

> a law enforcement officer may seize evidence in "plain view" without a warrant where (1) the officer is lawfully located in a place from which the item can plainly be seen; (2) the officer has a lawful right of access to the item itself; and (3) the incriminating nature of the seized item is immediately apparent.

United States v. Davis, 690 F.3d 226, 263 (4th Cir. 2012).

In this case, Britt conducted a lawful search of plaintiff's person for weapons and found the pills in a place which he had a lawful right of access due to his right to conduct a protective search of plaintiff. Minnesota v. Dickerson, 508 U.S. 366, 375-376 (1993) ("If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context."); United States v. Hernandez-Mendez, 626 F.3d 203, 213 (4th Cir. 2010), cert. denied, 131 S.Ct. 1833 (2011). Accordingly, the first and second element of the plain view test are satisfied. See id.

The court now considers the third element of the plain view test-whether the pills' incriminating character was immediately apparent. The record, in this case, reflects that Britt discovered two types of pills in plaintiff's prescription pill bottle. Britt called Officer Schoolfield upon discovering the pills and Officer Schoolfield then went to the bus station. Upon examining the pills at the bus station, Officer Schoolfield identified the pills as Vicodin and Lorazepam, which are schedule III and IV narcotics. Because the Vicodin pills were not in the correct prescription bottle, and because LPS officers had observed plaintiff give Mr. Smith a pill, the pills' illegal nature was immediately apparent satisfying the third element of the plain view doctrine. See United States v. Lusk, 142 F. App'x 680,683-84 (4th Cir. 2005); United States v. Bruce, 109 F.3d 323, 328-29 (7th Cir.1997) (concluding that shotgun ammunition, while not contraband in and of itself, "assume[d] an incriminating nature in connection with the search for items such as assault rifles."); United States v. Cervantes, 19 F.3d 1151, 1153 (7th Cir.1994) (stating that "although a wad of cash is not in itself a suspicious object," when the police have good reason to believe the cash on a defendant's person was just obtained in exchange for illegal drugs, it is "suspicious."); see also, United States v. Massenberg, No. 4:11-CR-4-FL, 2011 WL 3652741, at *6 (E.D.N.C. Aug. 17, 2011) ("The uneven appearance of the cigar and defendant's suspicious behavior reasonably led Puhak to believe, based on his training and experiences, that the cigar-like object was probably contraband.") (citation omitted)).

In sum, all three prongs of the plain view doctrine are satisfied here and the seizure of the pills did not violate the Fourth Amendment.[9] Based upon the foregoing, defendants' motion for

---

[9] To the extent plaintiff seeks to pursue a claim for compensatory damages based upon defendant Britt's alleged violation of Miranda v. Arizona, 384 U.S. 436 (1966), such claim is not cognizable pursuant to § 1983. See Straws v. Metts, No.4:07-00805-HFF-TER, 2007 WL 5289766, at *2 (D.S.C. Apr. 23, 2007) ("Rather, failing to follow Miranda procedures triggers the prophylactic protection of the exclusion of evidence, but does not violate any substantive Fifth

17

summary judgment on this claim is GRANTED, and plaintiff's motion for summary judgment is DENIED.

5.      Claim Against LPS

Plaintiff asserts a § 1983 claim against LPS on the grounds that plaintiff's detention and arrest were pursuant to LPS' policy and custom of racial prejudice, harassment, and intimidation. In support of his claim against LPS, plaintiff alleges that LPS "is liable because they are [] Defendant Britt[']s employer and allowed this to happen and continue to employ him." (Comp., p. 4.) An employer, however, may not be held liable for the acts of his employees pursuant to a theory of *respondeat superior*, because *respondeat superior* generally is inapplicable to § 1983 suits. Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009); Monell v. Dep't of Social Services, 436 U.S. 658, 694 (1978). Rather, "private corporations[, such as LPS,] can only be held liable under § 1983 if an official policy or custom of the corporation causes the alleged deprivation of federal rights." Rodriguez v. Smithfield Packing Co., Inc., 338 F.3d 348, 355 (4th Cir. 2003) (internal quotations omitted).

Plaintiff cites no written or formal LPS policy which is discriminatory or harassing. Likewise, plaintiff has not alleged or presented any evidence that LPS had knowledge of a clear and consistent pattern of harassing or discriminatory behavior on behalf of its' employees, and that LPS failed to act. See Iqbal, 556 U.S. at 681; Broyles v. Corr. Med. Servs., No. 08–1638, 2009 WL 3154241, at *2 (6th Cir. Jan. 23, 2009) ("[B]are allegations of a custom or policy, unsupported by

---

Amendment right such that a cause of action for money damages under § 1983 is created.") (internal citation and quotation omitted), aff'd, 269 F. App'x 316 (4th Cir. 2008); Thorton v. Buchmann, 392 F.2d 870, 874 (7th Cir. 1968) ("It is clear that the officers did not give plaintiff the warnings now required by Miranda v. State of Arizona. This would prevent the use of his statements in a criminal trial if hereafter commenced, but we think it has no significance in the present case.")

any evidence, are insufficient to establish entitlement to relief."). Thus, plaintiff failed to establish that any LPS had an official policy or custom of promoting discriminatory or harassing behavior on behalf of its employees. Based upon the foregoing, defendants' motion for summary judgment on this claim is GRANTED and plaintiff's motion for summary judgment is DENIED.

6.      Selective Prosecution

Plaintiff contends that Britt's decision to arrest plaintiff for possession of a controlled substance, and not Richard Smith, violated plaintiff's constitutional rights. "To establish a selective-prosecution claim, a defendant must demonstrate that the prosecution 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" United States v. Olvis, 97 F.3d 739, 741–42 (4th Cir. 1996) (quoting Wayte v. United States, 470 U.S. 598, 608 (1985)). This requires that plaintiff prove the following: (1) that similarly situated individuals of a different race were not prosecuted; and (2) that the decision to prosecute was invidious or in bad faith. Id. at 739.

In this case, plaintiff asserts that Britt acted with discriminatory intent because Britt investigated and charged plaintiff with possession of a controlled substance, but did not investigate or charge Richard Smith, a white male, who allegedly received a controlled substance from plaintiff. Plaintiff, however, has not met his heavy burden of establishing discriminatory intent or effect as Britt's decision to charge plaintiff likely was motivated by plaintiff's role as a potential distributor of controlled substances as opposed to Richard Smith's possession of a single pill. See Olvis, 97 F.3d at 744; (stating that prosecutorial decisions may be legitimately influenced by such factors as the defendant's role in a crime); see also, Franklin v. Office of Baltimore City State's Attorney, No. WDQ-14-2356, 2015 WL 799416, at *5 (D. Md. Feb. 24, 2015) (finding that plaintiff's recitation of three cases in which Baltimore City State's Attorney dismissed an assault charge against a white

person while continuing to prosecute the related complaint of African American was insufficient to establish selective prosecution as the prosecutors in those cases may have made their decisions based upon reasons unrelated to race).

Plaintiff's selective prosecution case, instead, is based solely on plaintiff's conclusory allegations of discrimination, which is insufficient to establish a selective prosecution claim. See Olvis, 97 F.3d 739 at 741–42; Daubenmire v. City of Columbus, 507 F.3d 383, 390 (6th Cir. 2007) ("A claim of selective prosecution can survive dismissal "only when the motion alleges sufficient facts to take the question past the frivolous state and raises a reasonable doubt as to the prosecutor's purpose. [] Plaintiffs' conclusory allegation does not surpass the "frivolous state.") (citation omitted).

In sum, plaintiff fails to allege a prima facie case of selective prosecution. Accordingly, defendants' motion for summary judgment as to this claim is GRANTED, and plaintiff's motion is DENIED.

7.    Qualified Immunity

Alternatively, the court addresses whether defendant Britt is entitled to the affirmative defense of qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

It is unclear in this context whether defendant Britt, as a private company police officer, is entitled to assert the affirmative defense of qualified immunity. See Payton v. Rush-Presbyterian-St. Luke's Medical Center, 184 F.3d 623, 631 (7th Cir. 1999). The court, however, need not reach this issue because, as discussed in detail above, plaintiff failed to establish a constitutional violation, and plaintiff's claims fail on the merits.

8.    New Claims

Plaintiff, in his response to defendants' cross-motion for summary judgment references Fourth Amendment claims in connection with a November 2011, incident involving his arrest by Officer Griffin for possession with the intent to distribute controlled substances. To the extent plaintiff attempts to allege this or any other new claims in his miscellaneous filings or in response to summary judgment, such claims are not part of this action because plaintiff failed to move to amend his complaint to include any new claims pursuant to Federal Rule of Civil Procedure 15(a).

Moreover, permitting plaintiff the opportunity to amend his complaint at this juncture would be prejudicial to defendants. For these reasons, the court does not consider any new claims asserted in plaintiff's miscellaneous filings or in response to defendants' motion for summary judgment as part of this action, and such claims are DISMISSED without prejudice. See United States v. ex rel. DRC, Inc. v. Ouster Battles, LLC, 472 F. Supp. 2d 787, 796 (E.D. Va. 2007) (citing Coleman v. Quaker Oats Co., 232 F.3d 1271, 1292 (9th Cir. 2000)), aff'd 562 F. 3d 295 (4th Cir. Apr. 10, 2009).

**CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment (DE 51) is GRANTED, and plaintiff's motion for summary judgment (DE 46) is DENIED.  The clerk of court is DIRECTED to amend the court's caption to reflect the name Stephen Cashwell Britt for the defendant plaintiff identified as S.C. Britt.   Finally, because the court has fully adjudicated this action, plaintiff's motion to expedite (DE 58) is DENIED as MOOT.  The clerk is DIRECTED to close this case.

SO ORDERED, this the 21st day of May, 2015.

_____
LOUISE W. FLANAGAN
United States District Judge